UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUTO-OWNERS INSURANCE COMPANY,

    Plaintiff,

    v.

HEATHERRIDGE UMBRELLA
ASSOCIATION, AFV MANAGEMENT, INC.,
AL VILLASENOR, and GOLFVISIONS
MANAGEMENT, INC.,

    Defendants.

No. 24 CV 375

Judge Manish S. Shah

### MEMORANDUM OPINION AND ORDER

Defendant HeatherRidge Umbrella Association notified its insurer, plaintiff Auto-Owners Insurance Company, that it had been sued by GolfVisions Management, Inc. for breach of contract, tortious interference with a contract, trade secrets misappropriation, and conversion related to a contract negotiation dispute. The insurance company filed this action for a declaration that it has no duty to defend or indemnify HeatherRidge in the underlying litigation. The parties move for judgment on the pleadings.

### I.    Legal Standards

Federal Rule of Civil Procedure 12(c) permits any party to move for judgment on the pleadings after the pleadings are closed. Judgment on the pleadings is proper when there is no disputed issue of material fact, and the moving party is entitled to judgment as a matter of law. *Artisan & Truckers Cas. Co. v. Burlington Ins. Co.*, 90 F.4th 893, 896 (7th Cir. 2024). I consider only the matters presented in the pleadings

and view the facts in the light most favorable to the nonmoving party. *Citizens Ins. Co. of Am. v. Wynndalco Enterprises, LLC*, 70 F.4th 987, 994–95 (7th Cir. 2023).

In this case, both sides agree on the material facts and raise only issues of law as to Auto-Owners' duty to defend and indemnify HeatherRidge.

## II.    Facts

### A.    Underlying Litigation

Defendant HeatherRidge Umbrella Association is a residential community consisting of eight neighborhood associations that own a communal golf course. [1-2] ¶ 4.[1] For over twenty years, HeatherRidge leased the management and operation of the course to GolfVisions Management, Inc. [1-2] ¶ 15. Under the lease, GolfVisions had a priority opportunity to exercise a four-year extension option by January 2023. [1-2] ¶¶ 22–25. Beginning in July 2022, GolfVisions asked to exercise the extension. [1-2] ¶ 28. HeatherRidge rejected the requested extension, instead offering a new lease with terms that GolfVisions found unfavorable. [1-2] ¶¶ 29–30. GolfVisions responded with an offer to compromise on some of the new terms. [1-2] ¶ 32. HeatherRidge did not formally respond to this proposal, but GolfVisions' owner met with HeatherRidge's board committee in July 2023. [1-2] ¶ 34. HeatherRidge also sought additional proposals from other companies. [1-2] ¶ 31.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [1] ¶ 1. The facts are taken from plaintiff's complaint, [1], and the underlying complaint, [1-2]. This court has jurisdiction because Auto-Owners is citizen of Michigan, defendants are citizens of Illinois, and the amount in controversy is more than $75,000. [1] ¶¶ 1, 3–5; 28 U.S.C. § 1332(a)(1). The parties agree Illinois law applies. [17] at 3; [22] at 8.

Throughout these negotiations, defendant Al Villasenor, HeatherRidge's property manager, acted as HeatherRidge's representative. [1-2] ¶ 33. As such, Villasenor had proprietary knowledge and information concerning GolfVisions' lease extension proposal. *Id.*

Villasenor and defendant AFV Management, Inc., a residential property management company, were vying to take over the course operations. [1-2] ¶ 37. They collaborated with GolfVisions' former course manager, who retired in 2019, regarding GolfVisions' proprietary operations, management, and strategies. [1-2] ¶ 38.

During the extension negotiations, Villasenor, on behalf of HeatherRidge, misrepresented to GolfVisions material facts and circumstances relating to the lease extension. [1-2] ¶ 39. He also falsely represented that HeatherRidge was considering terms and conditions with other, much larger, golf management companies. *Id.*

While GolfVisions' extension request was under consideration, Villasenor and AFV contracted with HeatherRidge to take over the golf course under much more favorable terms than those HeatherRidge had demanded of GolfVisions. [1-2] ¶ 42.

In October 2023, HeatherRidge's attorneys told GolfVisions that the lease agreement would not be renewed with no explanation. [1-2] ¶ 41.

AFV also successfully solicited GolfVisions' course manager to work as AFV's course manager at HeatherRidge's course. [1-2] ¶ 45. The manager possessed detailed knowledge of GolfVisions' proprietary information and privileged computer access. [1-2] ¶ 46. With the manager's assistance, HeatherRidge and AFV employees entered GolfVisions' offices, and removed the server and computer system containing detailed

proprietary information. [1-2] ¶¶ 47–48. They downloaded data regarding GolfVisions' operations at HeatherRidge, including trade secrets, confidential client/customer lists, and marketing plans. [1-2] ¶ 47. They returned the computer system to the premises in an altered state approximately one hour later. [1-2] ¶ 51.

GolfVisions brought a breach of contract claim against HeatherRidge, a claim for tortious interference with a contract against Villasenor and AFV, and trade secrets misappropriation and conversion claims against all defendants. [1-2] ¶¶ 54–102.

### B.    Current Litigation

Plaintiff Auto-Owners Insurance Company issued an insurance policy to HeatherRidge that provided for Commercial General Liability Insurance and Association Directors and Officers Errors and Omissions Insurance (D&O Endorsement) for the effective period of March 2023 to March 2024. [1] ¶ 7.

The D&O Endorsement provided that Auto-Owners would pay sums HeatherRidge "bec[ame] legally obligated to pay as 'damages' because of any negligent act, error, omission or breach of duty directly related to the management of the premises." [1-1] at 144. Auto-Owners would also "defend any 'suit' for damages covered by this policy at [its] expense." *Id.* The Endorsement excluded coverage for claims for "'bodily injury', 'property damage' or 'personal and advertising injury,'" and "[l]iability based upon any intentionally dishonest or fraudulent act." *Id.*

## III.    Analysis

Under Illinois law, an insurer's duty to defend arises when a complaint is brought against an insured, and the facts alleged in the complaint fall, or potentially

fall, within the policy's coverage. *Pekin Ins. Co. v. McKeown Classic Homes, Inc.*, 2020 IL App (2d) 190631, ¶ 17 (citing *Pekin Ins. Co. v. Wilson*, 237 Ill.2d 446, 455 (2010)). When determining whether an insurer has a duty to defend, a court compares the allegations in the underlying complaint to the relevant provision of the insurance policy. *Id.* (citing *Wilson*, 237 Ill.2d at 455).

"When construing an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in their insurance contract." *Id.* ¶ 18 (citing *Wilson*, 237 Ill.2d at 455). "If the words of the policy are clear and unambiguous, the court must afford them their plain and ordinary meaning." *Id.* (citing *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 292 (2001)). When ambiguity exists, "the policy will be construed strictly against the insurer, who drafted the policy, and liberally in favor of coverage for the insured." *Id.* (citing *Nicor, Inc. v. Assoc. Elec. & Gas Ins. Servs.*, 223 Ill.2d 407, 417 (2006)).

The parties do not dispute that the underlying claims are not covered under the Commercial General Liability Coverage. *See* [17] at 1; [22] at 2. But HeatherRidge argues that the D&O Endorsement covers the claims, and therefore, Auto-Owners must defend and indemnify HeatherRidge. [17] at 2.

The Endorsement covers agents for "any negligent act, error, omission or breach of duty." [1-1] at 144. It excludes "bodily injury," "property damage," "personal and advertising injury," and "intentionally dishonest or fraudulent act[s]." *Id.*

### A.    Breach of Contract

Typically, "insurance policies are presumed not to insure against liability for breach of contract." *Hartford Cas. Ins. Co. v. Karlin, Fleisher & Falkenberg, LLC*, 822

5

F.3d 358, 359 (7th Cir. 2016). "Insurance law fixes a line of demarcation between negligent acts and breaches of contract." *Id.* Insuring breaches of contract creates a "severe moral hazard problem" that would potentially encourage insureds to breach contracts since any resulting cost would shift to the insurer. *Id.* at 359–60. So, while a policy may cover an insured's negligent performance of its contract, intentional breaches of contract are typically not covered unless explicitly included. *See id.*; *Krueger Int'l Inc. v. Royal Indem. Co.*, 481 F.3d 993, 996 (7th Cir. 2007) (holding that "[i]f the act that precipitates the insured's liability is negligent and therefore tortious, the fact that it's also a breach of contract does not preclude coverage, since coverage is based on the specific acts insured against rather than on the particular remedy sought by the person harmed by the act" when addressing similar Wisconsin law).

The underlying suit alleges that HeatherRidge breached the contract when it: refused GolfVisions' priority option to extend the lease for four additional years; imposed a new lease with new terms instead of extending the existing lease; altered the lease agreement to a golf course management agreement instead of a lease; solicited proposals from other entities in violation of GolfVisions' exclusive right to an extension; refused to engage in the negotiation of the extension; interfered with GolfVisions' exclusive possession of the leasehold premises; misrepresented to GolfVisions that other larger, management companies were bidding for the contract; misappropriated GolfVisions' property; and stole GolfVisions' trade secrets, customer lists, marketing material, financial data, and other proprietary information. [1-2] ¶ 58. None of these acts are negligent. The complaint doesn't refer to negligence,

inadvertence, error, or mistake, or anything even implying such conduct. Instead, the complaint alleges the breach was caused by defendants' intentional scheme to mislead GolfVisions and make a "backdoor deal" for Villasenor and AFV to take over the course. [1-2] ¶¶ 33–43; *see also Illinois State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 2012 IL App (1st) 111810, ¶ 16 (listing cases finding intentionally dishonest acts and schemes could not be construed as negligent); *Steadfast Ins. Co. v. Caremark Rx, Inc.*, 359 Ill.App.3d 749, 756–762 (1st Dist. 2005) (same); *Connecticut Indem. Co. v. DER Travel Serv., Inc.,* 328 F.3d 347, 350–51 (7th Cir. 2003) (same). This conduct is also excluded from coverage as "intentionally dishonest or fraudulent act[s]."[2] *See* [1-1] at 144.

HeatherRidge argues that other parts of the policy explicitly exclude breach of contract, and therefore, the D&O Endorsement must cover such breaches. [17] at 3; [23] at 2. It also argues that there was no breach of contract, and GolfVisions' claim amounts to a breach of the duty to negotiate in good faith. [23] at 3; *see also* [1-2] ¶ 43 (alleging that HeatherRidge "breached its duty of good faith and fair dealing to GolfVisions"). Even if I were to accept these arguments, the alleged conduct causing any breach of the duty to negotiate in good faith still cannot be considered "negligent" and is not covered by the D&O Endorsement.

---

[2] Contrary to HeatherRidge's assertion, even if the conduct did not fall within an explicit policy exclusion, there would be no duty to defend. *See* [23] at 2. The alleged acts simply do not fall within the D&O Endorsement at all.

The alleged breach of contract does not trigger Auto-Owners' duty to defend.[3]

## B.    Tortious Interference

The underlying suit also alleges that Villasenor and AFV tortiously interfered with GolfVisions' lease. To succeed on its claim, GolfVisions must show (1) the existence of a valid and enforceable contract between it and another; (2) defendant's awareness of the contractual obligation; (3) defendant's intentional and unjustified inducement of a breach of contract; (4) subsequent breach by the other caused by defendant's wrongful conduct; and (5) damages. *See L. Offs. of Charles Chejfec, LLC v. Franz,* 2023 IL App (3d) 230083, ¶ 38.

Tortious interference requires "intentional and unjustified inducement." *Id.* GolfVisions' allegations reflect this. Villasenor and AFV intentionally induced the breach of contract for their own benefit. [1-2] ¶¶ 37–43. "Villasenor and AFV were vying to take over the HeatherRidge Golf Course operations." [1-2] ¶ 37. Villasenor was HeatherRidge's representative regarding the lease and lease extension, giving him the opportunity to misrepresent material facts and circumstances relating to the lease extension to GolfVisions. [1-2] ¶¶ 33, 39. Villasenor also attempted to dissuade GolfVisions from pursuing the extension by falsely representing that HeatherRidge was considering contracting with other, much larger golf management companies. [1-2] ¶ 39. "Villasenor and AFV purposefully interfered with GolfVisions'" extension.

---

[3] Auto-Owners argues that HeatherRidge itself is not covered by the D&O Endorsement, only its agents. [22] at 9–10. But the Endorsement states HeatherRidge is "an insured with respect to this coverage, but only . . . with respect to [its] liability for the negligent act, error, omission or breach of duty committed by its [agents]." [1-1] at 145. As an entity, HeatherRidge can only be liable through acts committed by agents, and the policy includes the entity as an insured.

8

[1-2] ¶ 67. These are not negligent acts, errors, omissions, or breaches of duty covered by the insurance contract. Further, the Endorsement explicitly excludes "intentionally dishonest or fraudulent act[s]." [1-1] at 144. Auto-Owners has no duty to defend HeatherRidge against this claim.

### C.     Trade Secrets & Conversion

The claims of misappropriation of trade secrets and conversion also do not fall within the Endorsement. The underlying suit alleges that defendants "misappropriated GolfVisions' Trade Secrets when they invaded GolfVisions' leased space, misappropriated the computer equipment, and downloaded GolfVisions' Trade Secrets without authorization or consent." [1-2] ¶ 78. Defendants entered the premises when GolfVisions' employees were not present with the assistance of GolfVisions' former course manager. [1-2] ¶¶ 47–48. They removed GolfVisions' server and computer systems to download proprietary information and trade secrets. *Id.* "[E]ach [defendant] knew that the Trade Secrets were being acquired by improper means." [1-2] ¶ 79. Defendants then returned the computer system in an altered state. [1-2] ¶ 51.

There's nothing "negligent" about that conduct, and the Endorsement also excludes "intentionally dishonest" acts from coverage. [1-1] at 144. Auto-Owners' has no duty to defend against these claims.

### D.     Duty to Indemnify

HeatherRidge asks that I delay in determining whether Auto-Owners has a duty to indemnify it. [23] at 4. It argues that it is premature to determine the duty to indemnify because there is no determination of liability in the underlying case. *Id.*

HeatherRidge is correct that "the question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 127 (1992). But that only applies when the insurer has a duty to defend. *Sentry Ins. v. Cont'l Cas. Co.*, 2017 IL App (1st) 161785, ¶ 39 ("[I]f a court determines that the insurer has no duty to defend, it may simultaneously determine that the insurer has no duty to indemnify."). "An insurer's duty to indemnify is narrower than its duty to defend." *Id.* Because Auto-Owners has no duty to defend, it has no duty to indemnify HeatherRidge. *See id.*

## IV. Conclusion

Defendant's motion for judgment on the pleadings, [17], is denied. Plaintiff's motion for judgment on the pleadings, [22], is granted. Plaintiff's motion for default judgment as to defendants Villasenor and AFV is granted. [22] at 2 n.1. Enter judgment in favor of plaintiff against all defendants, declaring that plaintiff has no duty to defend or indemnify defendants, and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: July 31, 2024

10